IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| CARL WILLIAM HARTNEY, TDCJ #01670192, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:15-CV-267 |
| MICHAEL BUTCHER, *et al.*, | § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Carl William Hartney (TDCJ #01670192), a Texas state prisoner, has brought an action under 42 U.S.C. § 1983 alleging that his rights under the Free Exercise Clause of the First Amendment were violated when some of his Native American religious articles were confiscated. The Court requested an answer from Rhonda Windmeyer, the correctional officer who confiscated the articles (Dkt. 15). Hartney's suit seeks damages and an "injunction against R. Windmeyer from harassing or obthering [sic] Plaintiff" (Dkt. 1 at p. 4). Hartney does not request the return of the confiscated items. In an "addendum" to his complaint, Hartney has added Texas Department of Criminal Justice ("TDCJ") Executive Director Brad Livingston[1] as a defendant and added a claim under the federal Religious Land Use and Institutionalized Persons Act ("RLUIPA"). The RLUIPA claim is extremely vague:

---

[1] Bryan Collier is now the Executive Director of TDCJ and will be substituted for Livingston. Livingston retired in 2016.

Hartney does not specify what relief he seeks under RLUIPA, and he does not specify which TDCJ policy he is challenging under RLUIPA.

Hartney is proceeding *pro se* and has been granted leave to proceed *in forma pauperis*. Windmeyer has asserted entitlement to qualified immunity and moved for summary judgment (Dkt. 29 and Dkt. 34). Hartney has responded (Dkt. 31, Dkt. 32, and Dkt. 38). Hartney's responses do not constitute competent summary judgment evidence because they are unsworn and the factual allegations within were not declared under penalty of perjury to be true and correct. *See Davis v. Hernandez*, 798 F.3d 290, 291 (5th Cir. 2015); *see also Larry v. White*, 929 F.2d 206, 211 n. 12 (5th Cir. 1991) ("Unsworn pleadings, memoranda, or the like are not, of course, competent summary judgment evidence."). However, the Court will consider Hartney's complaint and its attachments to be part of the summary judgment record because Hartney declared under penalty of perjury that the facts set forth in the complaint and attachments are true and correct (Dkt. 1 at p. 6). *See Hart v. Hairston*, 343 F.3d 762, 765 (5th Cir. 2003) ("On summary judgment, factual allegations set forth in a verified complaint may be treated the same as when they are contained in an affidavit."); *see also Davis*, 798 F.3d at 293 ("[F]ederal courts, this one included, have a traditional disposition of leniency toward *pro se* litigants.") (quotation marks omitted).

Before proceeding, the Court will note that many of Hartney's claims can be dismissed with minimal discussion. The claim for an injunction against Windmeyer's "harassment" is vaguely pled and unsupported by any evidence and, in any event, is

moot—Hartney has been transferred to a different unit (the Jester Unit, which is located in the Houston Division) and there is no evidence that Windmeyer has had any contact with him there. *Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001). RLUIPA does not create a cause of action against officials in their individual capacities, so no claim against Collier in his individual capacity is cognizable. *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 329–31 (5th Cir. 2009), *aff'd*, 131 S.Ct. 1651 (2011). Any claims for damages against the defendants in their official capacities, whether brought under Section 1983 or under RLUIPA, are barred by sovereign immunity. *Id.*; *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2001). Remaining are Hartney's claim for damages against Windmeyer in her individual capacity under Section 1983 and Hartney's claim for unspecified injunctive relief against Collier in his official capacity under RLUIPA.

After reviewing all of the evidence submitted, the pleadings, the parties' briefing, and the applicable law, the Court concludes that Windmeyer's motion for summary judgment must be granted. Hartney's claims against Collier will be dismissed as frivolous and for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B).

## I. BACKGROUND

Hartney is an adherent of a Native American faith and has been recognized as such by TDCJ since 2013 (Dkt. 29-2 at p. 11). He was sentenced to eight concurrent 20-year sentences in 2010 and is currently serving those sentences in TDCJ's Jester Unit.

On April 4, 2015, while Hartney was housed in TDCJ's Terrell Unit, Windmeyer

entered Hartney's bunk area and confiscated as contraband two leather swatches, 12 black beads, and four loose screws (Dkt. 1-1 at pp. 1, 5; Dkt. 29-3 at p. 5). Hartney filed Step One and Step Two grievances in which he argued that, in confiscating those items, Windmeyer acted "in violation of the PD-22[2] rules" governing the conduct of TDCJ employees (Dkt. 1-1 at p. 1). Hartney further argued in his grievances that Windmeyer's confiscation of the swatches and the beads "violated [his] religious rights per [TDCJ's] Chaplaincy Manual" because he needed the swatches and beads to pray at his altar (Dkt. 1-1 at p. 1). The swatches formed the base of the altar (Dkt. 1-1 at p. 1); the exact role of the beads in the prayer is unclear.

The investigation of Hartney's grievances revealed that Hartney had never properly registered the confiscated property and therefore had never obtained the "Registered Property Receipt," also known as a PROP-02 form, that was necessary for him to establish to Windmeyer (or any other TDCJ employee) that he had permission to possess the confiscated property (Dkt. 29-6 at pp. 3, 36). Under TDCJ policy, religious devotional items that are not properly registered and listed on a PROP-02 form are considered contraband and can be confiscated (Dkt. 29-2 at p. 3; Dkt. 29-6 at pp. 3, 16, 25). According to a statement that Windmeyer gave during the investigation, the religious items (meaning the swatches and

---

[2]The Court takes judicial notice that the PD-22 is essentially a human resources policy manual for TDCJ employees. Its formal title is "General Rules of Conduct and Disciplinary Action Guidelines for Employees." *See https://www.tdcj.state.tx.us/divisions/hr/hr-policy/pd-22.pdf.*

beads)³ drew Windmeyer's attention because they "[we]re not items allowed by policy 05.01" (Dkt. 29-3 at p. 7). Windmeyer's mention of "policy 05.01" refers to the portion of TDCJ's Chaplaincy Manual entitled "Religious Devotional Items and Observed Holy Days" (Dkt. 29-2 at pp. 3–10). The Chaplaincy Manual explains that "[a] TDCJ offender is permitted to possess only approved religious devotional items appropriate for the [inmate's] faith preference" (Dkt. 29-2 at p. 3). The Chaplaincy Manual provides a list of approved devotional items that inmates of Native American faith may possess, and that list includes: (1) a headband; (2) a feather; (3) a shell; (4) a medallion; and (5) a medicine bag (Dkt. 29-2 at p. 9). The medicine bag may contain the following "natural objects[:]" (1) seven sacred stones; (2) a bone; (3) a tooth; and (4) an herbal mixture of sage, sweet grass, and cedar (Dkt. 29-2 at p. 9).⁴ That said, the Chaplaincy Manual, read in conjunction with TDCJ's Administrative Directive AD-07.30,⁵ allows some play in the joints regarding the possession of religious devotional items—namely, an inmate can request religious accommodations that are not explicitly authorized by TDCJ regulations, and those accommodations can include permission to possess an unlisted religious devotional item (Dkt. 29-2 at p. 4; Dkt. 29-5 at pp. 4, 10–15). The inmate can request an accommodation by submitting an I-60 form to the

---

³Hartney does not challenge the confiscation of the four loose screws.

⁴The Chaplaincy Manual advises that "for religious reasons only the offender should touch" the items in the medicine bag, although the items "may be visually inspected" (Dkt. 29-2 at p. 9). Additionally, "[t]he offender should not be asked what the items mean" (Dkt. 29-2 at p. 9).

⁵Administrative Directive AD-07.30 is entitled "Religious Programming" (Dkt. 29-5 at p. 2).

-5-

unit chaplain, who will then have the inmate complete a "Request for Religious Accommodation" form and conduct an interview of the inmate (Dkt. 29-5 at pp. 4, 10). If the accommodation sought involves a religious practice that has not previously been addressed by TDCJ's Religious Practices Committee ("RPC"), the chaplain will then complete a "Religious Practice Issue Assessment" form; and the RPC, after considering "any compelling countervailing considerations[,]"[6] will decide whether to grant the accommodation (Dkt. 29-5 at pp. 3, 4, 11–12).[7] According to the language of the Religious Practice Issue Assessment form, "[i]f the request is clearly a recognized practice of the offender's designated faith preference and there are no compelling [countervailing] considerations [noted], then the request shall be accommodated" (Dkt. 29-5 at p. 12). If there are compelling countervailing considerations, the form instructs the chaplain to collaborate with the warden (or a designee of the warden) and the inmate (if the inmate will cooperate) in identifying any alternative accommodations (Dkt. 29-5 at p. 12).

When Windmeyer confiscated his swatches and beads, Hartney possessed PROP-02

---

[6]The Religious Practice Issue Assessment form gives several examples of compelling countervailing considerations, including "[o]ffender safety issue[s,]" "[u]nit safety/security issue[s,]" and the "[u]navailability of non-TDCJ or volunteer leadership" (Dkt. 29-5 at p. 12). The form orders the chaplain to consult with the warden (or a designee of the warden) and identify any such considerations and then to describe all of the identified considerations for the benefit of the RPC (Dkt. 29-5 at p. 12).

[7]Requests for accommodations involving religious practices that *have* previously been addressed by the RPC are evaluated "on a case-by-case basis" (Dkt. 29-5 at p. 4). It is not clear whether this "case-by-case" review is different from the process of submitting an accommodation request through the chaplain to the RPC, but any differences between the two circumstances are irrelevant here because there is no evidence that Hartney properly sought an accommodation for his leather swatches and his beads in the first place.

forms authorizing him to possess a feather with beads;[8] a brown leather headband; a necklace; a white shell; and a leather medicine bag containing two sacred stones and an herbal mixture of sage, sweet grass, and cedar (Dkt. 29-7 at pp. 3, 16, 17). Hartney did not have a PROP-02 form authorizing him to possess the confiscated leather swatches and beads. In fact, in one of his responses to Windmeyer's motion for summary judgment, Hartney admits that the items were properly seized as contraband (Dkt. 38 at p. 1) ("The [A]ttorney General has made it clear that the items that Officer Windmeyer confiscated was [sic] contraband."). There is no evidence that Hartney had ever sought permission to possess the swatches and beads from the RPC by presenting I-60 and Request for Religious Accommodation forms to the unit chaplain.

In his grievances, Hartney requested the return of the confiscated items and that Windmeyer "be punished pursuant to the PD-22 code violation" (Dkt. 1-1 at p. 4). After his grievances were denied, Hartney filed this lawsuit, in which he seeks damages and an "injunction against R. Windmeyer from harassing or obthering [sic] Plaintiff" (Dkt. 1 at p. 4). Hartney does not request the return of the confiscated items. Hartney initially brought suit under Section 1983; in a supplemental complaint, he named Livingston (for whom the Court has substituted Collier) as a defendant and added a claim under RLUIPA (Dkt. 11-1 at pp. 1–2). The RLUIPA claim consists of nothing more than citations to *Holt v. Hobbs*, 135 S.Ct. 853 (2015) and *Ali v. Stephens*, 822 F.3d 776 (5th Cir. 2016).

---

[8] Hartney concedes that the beads mentioned in his PROP-02 forms were not the beads that were confiscated (Dkt. 38 at p. 1).

## II. THE PLRA, SUMMARY JUDGMENTS, AND QUALIFIED IMMUNITY

### A. The PLRA

The complaint in this case is governed by the Prison Litigation Reform Act (the "PLRA"). Upon initial screening of a prisoner civil rights complaint, the PLRA requires a district court to scrutinize the claims and dismiss the complaint, in whole or in part, if it determines that the complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted;" or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). A reviewing court may dismiss a complaint for these same reasons "at any time" where a party, like Hartney, proceeds *in forma pauperis*. 28 U.S.C. § 1915(e)(2)(B) (mandating dismissal where the complaint is "frivolous or malicious," "fails to state a claim upon which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief"). The PLRA also provides that the court "shall on its own motion or on the motion of a party dismiss an action" if it is satisfied that the complaint is "frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief." 42 U.S.C. § 1997e(c).

Hartney proceeds *pro se* in this case. Courts construe pleadings filed by *pro se* litigants under a less stringent standard of review. *Haines v. Kerner*, 404 U.S. 519 (1972) (per curiam). Under this standard, "[a] document filed *pro se* is 'to be liberally construed,' *Estelle* [*v. Gamble*, 429 U.S. 97, 106 (1976)], and 'a *pro se* complaint, however inartfully

pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nevertheless, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (observing that courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). The Supreme Court has clarified that "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### B. Rule 56

Windmeyer has filed a motion for summary judgment under Federal Rule of Civil Procedure 56. Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In deciding a motion for summary judgment, the Court must determine whether the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

*Id.* at 322–23.

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an absence of a genuine issue of material fact. *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The movant, however, need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). The movant may meet its burden by pointing out the absence of evidence supporting the non-movant's case. *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995).

If the movant meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (citations omitted).

In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from those facts must be reviewed in the light most favorable to the non-movant. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). However, factual controversies are resolved in favor of the non-movant "only when both parties have submitted evidence of contradictory facts." *Alexander v. Eeds*, 392

F.3d 138, 142 (5th Cir. 2004) (citation and quotation marks omitted). The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See Diamond Offshore Co. v. A & B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002). Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). Instead, the non-movant must present specific facts which show the existence of a genuine issue concerning every essential component of its case. *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003). In the absence of any proof, the Court will not assume that the non-movant could or would prove the necessary facts. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

Affidavits cannot preclude summary judgment unless they contain competent and otherwise admissible evidence. *See Love v. Nat'l Medical Enterprises*, 230 F.3d 765, 776 (5th Cir. 2000); *Hunter-Reed v. City of Houston*, 244 F.Supp.2d 733, 745 (S.D. Tex. 2003). A party's self-serving and unsupported statement in an affidavit will not defeat summary judgment where the evidence in the record is to the contrary. *Smith v. Southwestern Bell Tel. Co.*, 456 Fed. App'x 489, 492 (5th Cir. 2012) ("[W]e have repeatedly held that self-serving statements, without more, will not defeat a motion for summary judgment, particularly one supported by plentiful contrary evidence."); *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001); *In re Hinsley*, 201 F.3d 638, 643 (5th Cir. 2000); *see also Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which

is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

Lastly, Rule 56 does not impose upon the Court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment; evidence not referred to in the response to the motion for summary judgment is not properly before the Court, even if it exists in the summary judgment record. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). Although Vaughn is proceeding pro se, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a pro se party of his burden in opposing a summary judgment motion. *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992). Even a *pro se* plaintiff must specifically refer to evidence in the summary judgment record in order to put that evidence properly before the court. *Outley v. Luke & Associates, Inc.*, 840 F.3d 212, 217 (5th Cir. 2016).

### C. Qualified Immunity

Windmeyer's motion invokes qualified immunity (Dkt. 34 at p. 19). In civil rights actions such as this one where the non-movant is suing government officials, the issue of qualified immunity alters the summary judgment analysis. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). If the qualified immunity defense is raised, the burden shifts to the non-movant to rebut it. *Id.* All inferences are drawn in the non-movant's favor. *Id.*

The qualified immunity analysis is complex and intensely fact-specific. The Court begins by applying the two prongs of the qualified immunity defense, though the Court may analyze the prongs out of order. The first prong is the question of whether the official's conduct violated a Constitutional right of the plaintiff. *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009). The second prong is the question of whether the Constitutional right was clearly established at the time of the violation. *Id.* For the right to have been clearly established for purposes of qualified immunity, the contours of the right must have been sufficiently clear that a reasonable official would have understood that what he was doing violated that right. *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008). The unlawfulness of the official's actions must have been readily apparent from sufficiently similar situations, though there need not have been commanding precedent holding the very action in question unlawful. *Id.* at 236–37.

If the plaintiff satisfies both prongs—i.e., if the official's actions violated a clearly established Constitutional right—the Court then asks whether qualified immunity is nevertheless appropriate because the official's actions were objectively reasonable in light of law that was clearly established at the time of the disputed action. *Callahan*, 623 F.3d at 253. Whether an official's conduct was objectively reasonable is a question of law for the Court, not one of fact for the jury. *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999). An official's actions must be judged in light of the circumstances that confronted him and the facts that were available to him, without the benefit of hindsight. *Graham v. Connor*, 490

U.S. 386, 396–97 (1989); *Callahan*, 623 F.3d at 253; *Lampkin v. City of Nacogdoches*, 7 F.3d 430, 435 (5th Cir. 1993).

Qualified immunity "establishes a high bar"—*Wyatt v. Fletcher*, 718 F.3d 496, 503 (5th Cir. 2013)—that protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Essentially, a plaintiff must demonstrate that no reasonable official could have believed that his actions were proper. *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994).

### III. HARTNEY HAS NOT PRESENTED EVIDENCE SUFFICIENT TO REBUT WINDMEYER'S QUALIFIED IMMUNITY DEFENSE.

The Court has little trouble concluding that Windmeyer is entitled to qualified immunity. In his response to Windmeyer's motion for summary judgment, Hartney acknowledges that the leather swatches and the beads were contraband but argues that his rights were nevertheless violated because Windmeyer, in the course of confiscating the swatches and beads, "destroyed" his altar "with clear and malicious intent" (Dkt. 38 at p. 1). There is no competent evidence showing that Windmeyer either acted maliciously in any way or "destroyed" Hartney's altar. Hartney further claims that, during the confiscation, Windmeyer "desecrated" some of his sacred non-contraband items by touching them (Dkt. 38 at p. 1); but there is no evidence that Windmeyer desecrated any of Hartney's items knowingly, let alone maliciously. The TDCJ Chaplaincy Manual admonishes correctional officers to avoid touching any items contained in a Native American medicine bag (Dkt. 29-2 at p. 9), but even though Hartney had a medicine bag there is no evidence showing that

Windmeyer touched the items within it. The leather swatches that Windmeyer confiscated were at the base of Hartney's altar, and the beads that she confiscated were contained in a shell atop the altar (Dkt. 1-1 at p. 1), so the evidence could support a finding that Windmeyer touched the altar and the shell. But there is no evidence showing that Hartney sought an accommodation from the RPC that would have prevented Windmeyer from touching his altar or his shell.

At bottom, the summary judgment record establishes that Windmeyer did nothing more than confiscate items that even Hartney admits were contraband. On this record, if Windmeyer did indeed desecrate some of Hartney's holy items by touching them, she did so while in the course of effecting a proper confiscation of contraband, and Hartney had never sought an accommodation barring correctional officers from touching those items. At worst, any desecration of Hartney's devotional items was negligent, and negligent conduct does not establish a Constitutional deprivation. *See Daniels v. Williams*, 474 U.S. 327, 332–33 (1986); *see also, e.g., Jones v. Shabazz*, Civil Action No. H-06-1119, 2007 WL 2873042, at *21 (S.D. Tex. Sept. 28, 2007), *aff'd*, 352 Fed. App'x 910 (5th Cir. 2009); *Shidler v. Moore*, 409 F.Supp.2d 1060, 1068–69 (N.D. Ind. 2006). There is no evidence that Windmeyer acted in a manner that was plainly incompetent or that Windmeyer knowingly violated the law. Windmeyer's motion for summary judgment will be granted.

## IV. HARTNEY HAS NOT STATED A CLAIM UNDER RLUIPA.

In a supplemental complaint, Hartney added a claim under RLUIPA and named

Livingston, then the Executive Director of TDCJ, as a defendant (Dkt. 11-1). As relevant here, RLUIPA provides that a state government cannot impose a substantial burden on the religious exercise of an inmate confined in its prisons, even if the burden results from a rule of general applicability, unless the burden is the least restrictive means of furthering a compelling governmental interest. *Chance v. Texas Dep't of Criminal Justice*, 730 F.3d 404, 410 (5th Cir. 2013). Although RLUIPA places a heavy burden on the state, claims under the statute are reviewed "with due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." *Id.* (quotation marks omitted).

Hartney "has failed to state a claim under RLUIPA because he has not alleged *a government regulation or policy* infringing his right to free exercise of religion." *Garrett v. Stephens*, 675 Fed. App'x 444, 446 (5th Cir. 2017) (emphasis added). TDCJ and its Director cannot be held liable under RLUIPA if Hartney cannot point to a specific TDCJ policy that created the complained-of burden on his religious exercise. *See Adkins v. Kaspar*, 393 F.3d 559, 571 (5th Cir. 2004) ("This [burden on the plaintiff's religious exercise] results, however, from a dearth of qualified outside volunteers . . ., not from some rule or regulation that directly prohibits such gatherings[, and t]he requirement of an outside volunteer . . . does not place a substantial burden on [the plaintiff's] religious exercise."); *Thunderhorse v. Pierce*, 364 Fed. App'x 141, 147 (5th Cir. 2010) ("Based on this evidence, the only fault that the

magistrate judge could have attributed to the TDCJ is that it should have selected more competent vendors—an oversight that does not rise to the level of a RLUIPA violation."). Hartney does not specify what relief he seeks under RLUIPA, and he does not specify which TDCJ policy he is challenging under RLUIPA; he simply cites *Holt v. Hobbs*, 135 S.Ct. 853 (2015) and *Ali v. Stephens*, 822 F.3d 776 (5th Cir. 2016). The citations to *Holt* and *Ali* are insufficient to allege a TDCJ policy because they deal with prison policies—specifically, grooming policies regarding facial hair that prevented Muslim inmates from growing beards in accordance with their faith—that have no possible relevance to these facts. *See Ali*, 822 F.3d at 780–82. To the extent that Hartney is challenging TDCJ's policy requiring him to fill out paperwork seeking permission to possess his leather swatches and his beads, he has provided neither facts nor authority indicating that such a challenge could support a RLUIPA claim. The Court has found authority holding that prisons can violate RLUIPA by denying inmates permission to possess religious items, but it has found no authority holding that prisons violate RLUIPA by requiring inmates to *seek* that permission. *See Chance*, 730 F.3d at 418–19 (noting that evaluations under RLUIPA of inmates' requests for permission to possess religious items necessarily include "fact-intensive" and "object-specific" inquiries into "the prison's asserted interests with regard to the risks and costs of the specific accommodation being sought").

## V. <u>CONCLUSION</u>

The motions for summary judgment filed by Windmeyer (Dkt. 29 and Dkt. 34) are

**GRANTED**. All other pending motions are **DENIED** as moot. Hartney's claims against Collier are dismissed as frivolous and for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B). All claims are dismissed with prejudice except for the claim for an injunction against Windmeyer's "harassment," which is dismissed without prejudice.

The Clerk is directed to provide a copy of this order to the parties.

SIGNED at Galveston, Texas on ___February 21___, 2018.

*George C. Hanks*
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE